| | | |
|---|---|---|
| FLORENCE PARKER<br>2601 MADISON AVENUE<br>BALTIMORE, MD 21217 | * | IN THE |
| | * | CIRCUIT COURT |
| PLAINTIFF | * | FOR |
| VS. | * | BALTIMORE CITY |
| ALLENTOWN, INC.<br>P.O. BOX 698<br>ALLENTOWN, NJ 08501-0698 | * | |
| | * | |
| SERVE ON:<br>RESIDENT AGENT<br>SONNY FARRWELL<br>13036 LONG GREEN PIKE<br>HYDES, MARYLAND | * | CASE NO:<br>24-C-11-000451 |
| AND | * | |
| ALLENTOWN CAGING EQUIPMENT<br>CO., INC.<br>P.O. BOX 698<br>ALLENTOWN, NJ 08501-0698 | * | |
| SERVE ON:<br>RESIDENT AGENT<br>SONNY FARRWELL<br>13036 LONG GREEN PIKE<br>HYDES, MARYLAND | * | |
| DEFENDANTS | * | |

JKB11CV 569

* * * * * * * * * * * *

## COMPLAINT

### AND

### PRAYER FOR A JURY TRIAL

Florence Parker, plaintiff, by Joseph T. Williams, her attorneys, sues Allentown, Inc and Allentown Caging Equipment Co,. Inc, defendants.

1

**EXHIBIT A**

1. This is a tort action in which the cause of action arose in Baltimore City, and the defendants actually engage in business on a regular basis in Baltimore City. Venue is therefore appropriate in Baltimore City.

2. The plaintiff resides in Baltimore City; she was, at the time of the occurrence, working for the Johns Hopkins Hospital at Bayview. She was injured while working and has therefore filed a workers' compensation claim and has received benefits. The employer and/ or its insurer therefore have or may have a financial interest in the outcome of this action.

## FACTS COMMON TO ALL COUNTS

3. On or about 9/22/2009, the plaintiff was working at Hopkins Hospital. One of her job responsibilities was to care for laboratory animals, including rats and mice.

4. At the same time and place a number of lab animals were stored and kept in cages. A large number of cages were kept in a large, heavy metal rack designed, manufactured, marketed and sold by the defendants. The cage was being used as intended. It had a large, heavy mechanism on its top to provide ventilation and water for the animals.

5. As the plaintiff was working with the animals, pulling out the cages to check on the status of their water and the cleanliness of the cages, the rack suddenly fell over onto the plaintiff, trapping her under its weight, which exceeded 1,000 pounds, for almost an hour. The plaintiff was severely injured and unable to free herself or call for help.

6. Subsequently, a co-worker discovered the plaintiff and she was freed and taken for emergency medical treatment.

7.  The rack was defective and dangerous and the defendants knew or should have known that it was defective and dangerous. Further that it could have been made safe for people who used it and others like it by securing it to the floor or a wall, so that it would not tip over and fall on and injure persons working on or near them.

8.  The defendants were negligent in that they failed to act reasonably to design the product so that it would be safe; they negligently failed to warn users of the dangers that the product presented. They were or may have been negligent in other ways.

9.  The plaintiff acted reasonably at all times and did not cause or contribute to her injuries in any manner.

10. As a sole, direct and proximate result of the negligence of the defendants, the plaintiff was severely injured and suffered painful and permanent injuries, and has incurred substantial economic and non-economic damages.

## COUNT ONE

### NEGLIGENCE

11. The plaintiff incorporates by reference the allegations set forth in paragraphs 1-10 above as if set forth in their entirety herein and further says that the defendants were negligent in designing, manufacturing, selling and providing warnings to ultimate users of the subject product. They were negligent in designing a rack that required the user to pull drawers out, which would forseeably shift the weight and balance of the rack, without including in the design a device or element that would prevent the entire rack from falling over.

12. As a sole, direct and proximate result of the negligence of the defendants, the plaintiff was injured and incurred monetary and non-monetary damages.

13. The plaintiff acted reasonably at all times and did not cause or contribute to the occurrence in any manner.

WHEREFORE, this action is brought and the plaintiff demands FIVE MILLION DOLLARS ($5,000,000) in compensatory damages.

## COUNT TWO

### FAILURE TO WARN

14. The plaintiff incorporates by reference the allegations set forth in paragraphs 1-10 above as if set forth in their entirety herein and further says that the defendant failed to warn the plaintiff's employer and/or the plaintiff of the danger that the rack would tip over, that it was unsafe, that it needed to be secured to the floor or wall to be safe, and of other dangers.

15. As a sole, direct and proximate result of the failure to warn, the plaintiff was injured and incurred monetary and non-monetary damages.

WHEREFORE, this action is brought and the plaintiff demands FIVE MILLION DOLLARS ($5,000,000) in compensatory damages.

## COUNT THREE

### BREACH OF WARRANTY

16. The plaintiff incorporates by reference the allegations set forth in paragraphs 1-10 above as if set forth in their entirety herein and further says that the defendants sold the product to Johns Hopkins Hospital.

17. At the time of the sale and delivery of the product, the defendants impliedly warranted to the buyer and to the plaintiff that the rack was merchantable and fit for the ordinary purpose for which storage racks are intended, namely, to hold cages for containment of lab animals and for all necessary and related uses, including cleaning, viewing, opening and closing the cages and related uses.

18. At the time of the sale and delivery of the product, the defendants impliedly warranted to the buyer and to the plaintiff that the rack was merchantable and fit for the particular purpose which Hopkins Hospital had communicated to the defendants, namely to contain cages of lab animals in a room in which the floor was not level, but in fact was sloped or graded so that liquid would flow to a low area where a drain was located. The defendants held themselves out to the public as having superior knowledge and skill in the design and operation of animal storage racks, and the hospital relied on the superior knowledge and skill of the defendants in selecting the rack for the particular purpose of storing animal cages in a room with uneven, non-level or sloping floors.

19. On 9/22/2009 the plaintiff was using the rack and working with the cages contained therein in a reasonable and prudent manner, when it fell over onto her, causing severe, painful and permanent injuries, and trapping her for an extended period of time.

20. As a result, the defendants breached their implied warranties of merchantability and fitness for a particular purpose to the plaintiff which directly and proximately caused her to suffer economic and non-economic damages and losses.

WHEREFORE, this action is brought and the plaintiff demands FIVE MILLION DOLLARS ($5,000,000) in compensatory damages.

## COUNT FOUR

### DESIGN DEFECT

21. The plaintiff incorporates by reference the allegations set forth in paragraphs 1-10 above as if set forth in their entirety herein and further says that the defendant's product, the cage storage rack, was defective as designed.

22. The design of the product was defective in that it was supported by rollers, which are inherently unstable, and that it was not designed to be secured to the floor or a wall to keep it from tipping over while in use. The rack as designed required the user to pull cages out, like drawers, which would forseeably shift the weight and balance of the entire rack, without including in the design a feature which would prevent the entire rack from falling or tipping over.

23. The subject rack was intended for use in laboratories, and the defendants knew or should have known that many labs are designed with sloping floors to allow for drainage.

24. Further, the rack was designed with a mechanical unit on top, which provided water and air for the animals below. That unit created an additional instability, which made the rack dangerous and subject to tip over.

25. Because it was reasonably expected that the subject rack would be used in labs with non-level floors and contained a heavy unit on top, the rack should have been designed so that it could not be tipped over while in ordinary use.

26. The cost of a design feature which would have prevented unexpected tip-over would have been minimal in relation to the cost of the entire unit and in consideration of the danger that a tip-over presented.

27. As a result of the design defect, the plaintiff was injured severely and incurred substantial economic and non-economic damages.

WHEREFORE, this action is brought and the plaintiff demands FIVE MILLION DOLLARS ($5,000,000) in compensatory damages.

## COUNT FIVE

### STRICT LIABILITY

28. The plaintiff incorporates by reference the allegations set forth in paragraphs 1-10 above as if set forth in their entirety herein and further says that the rack was an abnormally dangerous product, as designed. The use of the rack presented to users an unreasonably dangerous risk of harm.

29. At all times the defendants had control over the design of the rack and the decision whether to add safety features to prevent the rack from tipping over and falling onto users.

30. The plaintiff suffered severe, painful and permanent injuries as a sole, direct and proximate result of the abnormally dangerous product.

WHEREFORE, this action is brought and the plaintiff demands FIVE MILLION DOLLARS ($5,000,000) in compensatory damages.

*[signature]*
Joseph T. Williams
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
Phone: 410-938-8666
Fax: 410-938-8668
[email illegible]

Attorney for the plaintiff